170]                    *GARDENER *v.* WOODYEAR.

Bond for the prosecution of a writ of error good, where the condition is sub-
    stantially that required by the statute, though its terms are not exactly
    followed.

THIS was an action of debt upon a bond. The declaration was
in the usual form; the defendants craved oyer and demurred.
The condition of the bond is as follows : " Whereas, Thomas Wood-
year hath this day obtained our writs of error and supersedeas to
a judgment of the court of common pleas for Ross county, obtained
by John Gardener, plaintiff, against the said Thomas Woodyear,
defendant, April term, 1819. Now if the said Thomas Woodyear
will prosecute our said writs to effect, and abide the judgment of
the court thereupon had, then the above obligation to be void,
otherwise to remain in full force and virtue."

The court of common pleas of Ross county gave judgment on
the demurrer for the plaintiff, but assessed his damages to only fif-
teen dollars, a sum sufficient to pay the costs on the writ of error.
The plaintiff appealed to the Supreme Court, and the question aris-
ing on the demurrer was reserved for decision here.

ATKINSON and LEONARD, in support of the demurrer :

The bond which the statute requires on a writ or error being
allowed, must be conditioned for the payment of the condemnation
money and costs in the common pleas, in case the judgment of the
common pleas be affirmed in whole or in part.

The bond given in this case is conditioned that T. Woodyear
shall prosecute the writs of error and supersedeas to effect, and
abide by the judgment of the court *thereupon* had.

It is understood to be the opinion of this court, that a bond
taken in pursuance of a statute, must conform to the provisions of
the statute; and that any variance in the legal effect of it renders
such bond null and void. This doctrine is expressly recognized
in 3 Mass. 105 ; 1 Bibb, 214; 1 Pennington, 120, cited in American
Digest, 70 ; 7 Cranch, 287. The reason and policy of this doctrine
is very fully and ably gone into by the court in the case cited from
Bibb.

Gardener *v.* Woodyear.

The language of the condition here is obviously variant through-out from the language of the statute. 18 Rep. 410, sec. 95. But that this bond is also variant in its *legal import and legal effects*, as well as in its language, is evident from several considerations.

1. The statute makes the liability of the securities to depend upon the condition of *affirmance*, in whole or in part, of the judgment *of the common pleas by the Supreme Court. Their [171 liability on this bond is made to depend on the condition of T. Woodyear's *prosecuting the writs of error and supersedeas to effect, and his abiding by the judgment of the court thereupon.* In the one case, the liability is conditioned or depends upon an *act of the court;* in the other, upon the *acts of T. Woodyear.* A forfeiture of the bond in the one case can only take place upon the *affirmance of the judgment below;* in the other, it may take place *before and without* such affirmance; as by an abatement of the suit in consequence of the death of the plaintiff in error, and no executor or administrator being appointed, or if appointed fails to prosecute; or by the writs being *quashed.* In either of these cases the liability of the securities would become fixed—fixed by the *non-performance* of an act upon which a forfeiture is not made at all to depend by the statute, and *by which very non-performance* the securities in a bond conditioned according to the statute would be *discharged* from all liability; because the event, to wit: the *affirmance* of the judgment below, in such case, could not or does not take place, and without such affirmance they could not be held.

But by this bond the forfeiture and liability of securities is also made to depend upon an act of T. Woodyear *posterior*, as well as upon an act *prior* to that contemplated by the statute, to wit: his abiding by the judgment of the court upon the writ of error.

2. Upon a forfeiture of a bond taken pursuant to the statute, the securities become bound to pay the amount of the *condemnation money and costs of the common pleas.* On this bond they are bound, if bound at all, to satisfy the judgment of the *Supreme Court*, and this liability may be *greater* or *less* than that contemplated by the statute, according as the judgment of the Supreme Court may be. 1. It may be *greater* in this, that the Supreme Court may reverse the judgment below, and then go on and render such a judgment as the common pleas should have rendered. Such a reversal would be a *discharge* of the securities in a bond taken agreeable to the statute; but in this case, by such a bond as this, the securities

would be bound to satisfy the judgment of the Supreme Court on the reversal; for the letter and spirit of the condition of this bond would hold them to the judgment, and by no legal rules of construction could their liability be avoided. 2. The liability on a bond like this may be *less* than the statute intended; as in the present case, the judgment being only for the cost accruing on the writ of error. The judgment for the costs is all the judgment which T. Woodyear was bound to abide by, and all for which the securities 172] can be held, admitting the bond *to be a valid one; there being no reversal and judgment for the debt, for that part of the entry or record relative to there being no error, and the affirmance of the judgment below is but the mere *opinion* of the court, giving no right of recovering anything from one to the other. This is evident: 1. Because the Supreme Court never render a judgment for anything more than the costs upon the writ of error, unless they *reverse* the judgment below, and here was no reversal. 2. Because the judgment below remained *valid and in force*, and was all the judgment necessary to enforce the collection of the debt on which it was rendered, and another judgment in the Supreme Court, for the same debt, between the same parties, would have been superfluous, and a thing unknown to the law. 3. Because the statute does not consider it in the light of a judgment. It considers an affirmance only as a matter of fact, or rather an event which may or may not take place. It makes it a condition simply, upon which the liability of the securities in a bond, taken agreeable to its provisions, is suspended. When it takes place, the extent of its operation is to *remove the bar* to the enforcement of the judgment below, and fix the liability of securities to pay that judgment. The statute recognizes its operation no further, and it is unnecessary that it should, for the object of its provisions is secured if the bond be properly taken. 4. It is nowhere defined to be a judgment, but, on the contrary, the idea of its being a judgment is expressly negatived in the books. 3 Blac. Com. 395, 396, and Jacob's Law Dic., Judgment.

3. If the legal import and effect of the condition of this bond is the same with one taken in strict pursuance of the statute, the plaintiff might have declared as upon the letter; that is, set forth the condition contemplated in the statute, averred the affirmance of the judgment below by the Supreme Court, and alleged for breach the non-payment of the condemnation money and costs in

Gardener *v.* Woodyear.

the common pleas; and have produced this bond to support his declaration. Upon oyer and demurrer to such a declaration, for variance between the condition of the bond set forth on oyer and the condition of the bond stated in the declaration, would this court hesitate for a moment to sustain such a demurrer? To decide otherwise would, it appears to me, be disregarding at once the plain import of language, the ordinary and established rules of construction, as well as the settled rules of pleading. It would be saying: "True it is the *language* is variant—the *act* or *event* upon which the. liability of the securities depends, is variant—the time *when* a forfeiture may or must accrue or liability commence, is variant—and the *thing* to be performed *on a forfeiture is [173 not the same; yet notwithstanding all these variances, the legal import and effect of the condition of the bond set out on oyer is the same, and different from the condition set forth in the plaintiff's declaration." It is impossible that the magic of any supposed *intention* in defendants to execute a. bond agreeable to the statute, can harmonize such discordant language, terms, and consequences, or authorize this court to pronounce them to mean one and the same thing in law. Securities are held only by the most rigid rules of construction, and not otherwise.

4. The statute of 1808, 6 vol. 32, provided the same kind of bond to be given upon cases appealed, injunction, and writs of error. This statute was evidently defective in securing its objects, at least as to injunctions and writs of error. It was too *general* in its provisions to be considered *specific*, and too specific to be considered merely directory. This defect was remedied by the act of 1810, by providing *specifically* for each and every case *how* the bond shall be given. It fixes a condition absolute in each case; until that is complied with in the terms laid down no appeal is taken—no injunction can stay proceedings, and no writ of error can operate as a supersedeas. The deposit in the clerk's office of a bond different from that so specifically required by the statute affects nothing in either case, any more than a deposit of the amount of money intended by the statute to be secured would do. The plaintiff below should in this case have disregarded the bond, treated it as a nullity, and gone on and collected his judgment; and moved the court to dismiss the writ of error on the ground that. it had been improvidently issued.

BOND, for the plaintiff:

The question raised upon this demurrer is whether the bond must be held void because the condition is not in the terms required by the statute.

In determining this inquiry, it seems material to ascertain what the legislature intended by requiring a bond to be executed in such cases. It is manifest that inasmuch as the plaintiff was delayed in the enforcing of his judgment, and might thereby hazard his claim, the act was intended to guard against this danger in the event of an affirmation of the judgment. The defendant signed the bond under the expectation that they would be liable for the debt in this event.

Different words or language may convey the same idea, and have **174]** *the same effect, and it is wholly immaterial whether the language of the bond be "*in totidem verbis*" as used in the statute, provided the idea or effect be the same. The law regards substance and not form; *haret in litera et haret in cortice.* Suppose a statute require a sheriff to execute a bond conditioned "for the performance of his duty," and that the bond executed stipulate, "that he shall serve all process which comes to his hands, pay over all money by him collected, and, in fine, minutely detail every act which might be deemed part of his duty;" it is quite certain that such bond would be good, for the bond, though more in detail, comprehends no more than the statute required. This position was maintained by the supreme court in Ross county, at December term, 1821, in a suit on the bond of sheriff Steel.

The language of the condition in this case does not increase the liability of the parties beyond what it would be if the exact words of the law were used. Suppose the bond contained the language of the law, may it not be asked in such case if the parties would not be liable if the writ of error was not prosecuted to effect—if it was dismissed, abated, or in any way abandoned by the plaintiff in error. A contrary construction would entirely defeat the statute. Where, then, is the increased liability of the obligors? If it be contended that the language used would render the party liable, by the frequent continuance of the cause, or its inefficient prosecution, the answer is, that no matter how the truth of the case is, every continuance is in the eye of the law upon legal ground, for sufficient reason, and is presumed to have had the sanction of the court.

Gardener *v.* Woodyear.

As to the residue of the condition, "to abide the judgment of the court." To *abide* by the judgment, is to be *governed* by it. If the judgment is for the plaintiff in error, his covenant is performed; if *against* him, he certainly does not abide it unless he comply with it by paying the money; and by paying the money he discharges the covenant, for that is the utmost that the law requires, or the plaintiff could demand. The payment of the money is what the legislature intended to secure in requiring a bond to be executed.

The case found in 1 Bibb, 214, is one *sui generis*, and reasons of public policy, as disclosed in the opinion of the court, called for the decision. So, also, in the case found in 3 Mass. 105, a rigid construction seemed necessary. But it is worthy of remark, that in this same case in Massachusetts, it is decided that although the statute regulating prison bounds require the bond and security to be approved by two justices, still the bond is good without such approbation. *And in Kentucky, 2 Bibb, 186, it is held that [175 although a statute fix the penalty of a sheriff's bond at one sum, yet a sheriff's bond executed for a greater penalty is good to the extent of the statutory penalty; and so if it be for less. 1 Bibb, 193, 479.

The rule is far from being a settled general rule, that a statutory bond, not pursuing the words of the statute, is therefore void. There are, it is true, cases of this kind, but they are founded on peculiar circumstances.

In Virginia (2 Hen. & Mun. 464), the supreme court of appeals examined this subject. A statute of that state required sheriffs who collected taxes to execute bonds to the treasurer. In the case referred to, the bond was given to the *commonwealth*, and sustained by the court. So also in a case before the general court of the same state (2 Call, 290), the bond for the forthcoming of property, which ought to have been executed to the *commonwealth*, was given to the sheriff, and yet sustained, and that judgment was affirmed by the court of appeals.

So far as the decisions of our own courts are known, they have sustained bonds though not in all respects pursuing the language of the law. Two cases are known in Fairfield, and one in Washington county, made by the present Supreme Court, and they will be recollected.

It may be added that all bonds in error which have been taken in Ross county since the passage of the present judiciary

185

act, are like the one now sued on. These bonds are prepared by an officer of the court, in virtue of the statute, and on that account should not receive a rigid construction.

In 2 Hen. & M. 400, and 4 Mans. 383, two cases of bonds executed under a statute, and in which the surety's name was wholly omitted in the obligatory part of the bond, blank being left, the court sustained the bonds, and in the first of the cases Judge Tucker observes: "Where a party against whom an execution issues obtains an *indulgence* upon certain conditions, the court will not regard trifling errors, which are often the effect of haste, or inexperience in young deputy sheriffs with an eagle's eye, where the substantial justice of the case, or the positive and invariable rules of law, do not require them to do so." And in the same case Judge Flemming observes, "that if the meaning of the parties can be collected from the bond, it will be good."

The reasoning of these two judges is strictly applicable, and sustains the bond sued on in this case.

176] *By the COURT:

The bond in this case was taken under the ninety-fifth section of the judicial act, which directs that it shall be taken "in double the amount of the judgment obtained or decree rendered, conditioned for the payment of the condemnation money and costs, in case the judgment of the common pleas should be affirmed in whole or in part." This direction is not pursued in terms, the words used being, "that he will prosecute the said writs to effect, and abide. the judgment of the court thereupon had." The defendants insist that the condition not being in conformity with the statute, the bond is inoperative, that it never was operative, and that the writ of error might have been quashed.

The principal point of the defendants' argument is, that the stipulation contained in the condition is different and more disadvantageous to them than that required by law. By the latter they are to pay the judgment and costs, *if the judgment be affirmed.* By the bond they forfeit the obligation, if for *any cause* the party should fail to prosecute his writ to effect.

The ninth section of the judiciary act of 1803, regulating appeals from the common pleas to the Supreme Court, directed that bond should be given *"for prosecuting his appeal to effect."* The seventh section of the act of 1805, on the same subject, contains the same

provision; and the ninth section of the same act directs that, on writs of *certiorari* and *habeas corpus cum causa,* the condition of the bond shall be, *"that he will prosecute the same to effect, and abide the judgment of the court thereupon had."*

The eleventh section of the judiciary act of 1806, in relation to writs of error, *certiorari,* etc., directs that bonds shall be taken, conditioned, *"that he will prosecute the same to effect, and abide the judgment of the court thereupon had."* Section 13 of the act of 1808 makes the same provision.

In the revision of 1810, this phraseology was changed, and that introduced which is contained in the present laws. From 1803 to 1810, the courts uniformly decided that the undertaking to *prosecute the writ to effect, and abide the judgment of the court thereon had,* subjected the parties in the bond to the payment of the amount of the judgment and costs. The change of language in 1810 was adopted to express, in more explicit terms, the same thing which the courts had adjudged the other terms to express.

The bond in question contains precisely the very terms required by the earlier statutes in such cases, and which were interpreted by the courts to subject the obligors to the same liability imposed by *the existing law, and to no other. This interpretation was [177 adopted from a clear conviction that such was the effect which the legislature intended the terms used should have. Because the legislature have now adopted more explicit terms, the court can not be warranted in deciding that the same terms, used for the same purpose, meant one thing in 1810, and another thing in 1820. It is, therefore, the opinion of the court, that the condition is, in substance, the same as if it had contained the express terms now required by the statute.

Upon an examination of the cases cited, as far as the authorities are within reach of the court, it is found that, taken altogether, the courts of other states have gone much further to support statutory bonds than it is necessary to go in this case. Where the bond has been held inoperative, the circumstances were materially different from those which arise here. There is no case where a bond, fairly and regularly executed, and comprising, substantially, all the requisites of the statute, has been adjudged void because it departed, in some one or more particulars, from the exact words used in the statute authorizing it to be taken. It has been the uniform object of our courts to support bonds executed under the provisions of

law, where, by a reasonable interpretation, such bonds can be made to meet the intention for which they were required and taken. Where the party has had all the advantages of making the bond, the court can not aid him to avoid its obligations, by adopting strained and rigid maxims of construction.

Judgment must be given for the plaintiff.